## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VOXER, INC. AND VOXER IP LLC, | |
| Plaintiffs, | Case No. |
| v. | **JURY TRIAL DEMANDED** |
| AMAZON.COM, INC., AMAZON WEB SERVICES, INC., AND TWITCH INTERACTIVE, INC., | |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Voxer, Inc. and Voxer IP LLC (collectively, "Voxer") file this Original Complaint against Defendants Amazon.com, Inc. ("Amazon.com"), Amazon Web Services, Inc. ("AWS"),  and Twitch Interactive, Inc. ("Twitch") (together with Amazon.com and AWS, "Amazon" or "Defendants") for infringement of U.S. Patent Nos. 10,142,270 (the "'270 Patent"); 10,511,557 (the "'557 Patent"); 11,146,516 (the "'516 Patent"); 11,777,883 (the "'883 Patent"); and 11,658,929 (the "'929 Patent") (collectively, the "Asserted Patents") and allege as follows:

## INTRODUCTION

1.      This is a patent infringement suit relating to Amazon's unauthorized and unlicensed use of the Asserted Patents in Amazon's systems, devices, and servers used for streaming video services, such as its Twitch.tv video service (the "Accused Products," described in further detail below).

2.      In 2007, Tom Katis, a veteran of the U.S. Army Special Forces who served in Afghanistan and received the Bronze Star, co-founded Voxer. While at Voxer, Mr. Katis and his co-inventors filed for and were awarded the Asserted Patents, which each relate to novel communication techniques.

3.    Voxer launched a prototype in 2009 and later a version of the Voxer Walkie Talkie App. By 2011, the Voxer Walkie Talkie App had become a viral success and attracted millions of users.

4.    In 2011, Twitch Interactive, Inc. launched Twitch TV.

5.    In 2014, Amazon.com, Inc. acquired Twitch Interactive, Inc.

6.    Amazon has benefitted and is currently benefitting from Voxer's innovations, which enable the Accused Products to receive, store, and stream high-quality video more efficiently, more effectively, and more scalably to millions of users.

7.    Voxer brings this action to end Amazon's unauthorized and unlicensed use of the Asserted Patents.

## THE PARTIES

8.    Plaintiff Voxer, Inc. is a Delaware corporation with its principal place of business at 539 West Commerce St. #7050, Dallas, Texas, 75208.

9.    Plaintiff Voxer IP LLC is a Delaware limited liability company and the legal owner by assignment of the Asserted Patents, which were duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Voxer IP LLC is a wholly owned subsidiary of Voxer, Inc. Voxer, Inc. is the sole member and exclusive owner of Voxer IP LLC and enjoys complete control over the management and business affairs of Voxer IP LLC.

10.    Amazon.com, Inc. is a Delaware corporation. Since 1996, Amazon.com, Inc. has been incorporated in Delaware under SOS file number 2620453. Amazon.com, Inc. may be served through its registered agent for service, Corporation Service Company, 251 Little Falls Dr., Wilmington, Delaware, 19808.

11.    Amazon Web Services, Inc. is a Delaware corporation. Since 2006, Amazon Web Services, Inc. has been incorporated in Delaware under SOS file number 4152954. Amazon Web

2

Services, Inc. is a wholly owned subsidiary of Amazon.com, Inc. Amazon Web Services, Inc. may be served through its registered agent for service, Corporation Service Company, 251 Little Falls Dr., Wilmington, Delaware, 19808.

12.    Twitch Interactive, Inc. is a Delaware corporation. Since 2006, Twitch Interactive, Inc. has been incorporated in Delaware under SOS file number 4221511. Twitch Interactive, Inc. is a wholly owned subsidiary of Amazon.com, Inc. Twitch Interactive, Inc. may be served through its registered agent for service, Corporation Service Company, 251 Little Falls Dr., Wilmington, Delaware, 19808.

13.    On information and belief, Twitch Interactive, Inc. operates the Twitch.tv website and related architecture, which is one of the providers of the Accused Products.

14.    On information and belief, Amazon.com, Inc. operates the Amazon.com website and related architecture, which is one of the providers of the Accused Products. On information and belief, Amazon.com, Inc. operates or is otherwise responsible for Twitch Interactive Inc. and the Accused Products, as shown by at least various legal documents on Twitch's legal page.[1] Moreover, Amazon.com, Inc., through its ALERT tool, can receive service of criminal process on Twitch Interactive, Inc.[2]

15.    On information and belief, Amazon Web Services, Inc. operates servers and other services used to provide the Accused Products as well as operating its own channel on Twitch.tv and using Twitch technology to provide live-video services.[3]

---

[1] https://legal.twitch.com/en/legal/developer-agreement/;
https://legal.twitch.com/en/legal/monetized-streamer-agreement/;
https://legal.twitch.com/en/legal/state-specific-privacy-disclosures/.
[2] https://legal.twitch.com/en/legal/service-of-process/; https://ler.amazon.com/us.
[3] https://aws.amazon.com/blogs/media/how-twitch-built-the-global-live-streaming-network-that-powers-amazon-ivs/; https://medium.com/@puneetkumawat/twitch-empowering-the-world-of-live-streaming-with-aws-933767cb468d.

16.    Amazon's Accused Products include, but are not limited to, Twitch.tv's video communication method "where millions of people come together live every day to chat, interact, and make their own entertainment together."[4] Amazon directly and indirectly develops, designs, manufactures, distributes, markets, offers to sell, and sells the Accused Products, including devices running the Accused Products and systems, servers, and services used with the Accused Products, in the United States, including in this District, and otherwise purposefully directs infringing activities to this District in connection with the Accused Products. For example, Amazon offers the Accused Products to residents of this District through its website and apps, as shown by the images below.[5]



---

[4] https://www.twitch.tv/p/en/about/
[5] https://www.twitch.tv/p/en/about/;https://www.twitch.tv/creatorcamp/en/level1/going-live/setting-up-your-stream/; https://www.twitch.tv/





17.     Defendants have been and are acting in concert, and are otherwise liable jointly, severally, or otherwise for relief related to or arising out of the same transaction, occurrence, or series of transactions or occurrences related to the making, using, selling, offering for sale, or otherwise distributing the Accused Products, the Twitch Interactive, Inc. website, the Twitch.tv services, the Twitch applications for mobile and other devices, and devices running and/or using the Accused Products.

18.     In addition, this action involves questions of law and fact that are common to all

Defendants. For example, on information and belief, Amazon.com, Inc., Amazon Web Services, Inc., and Twitch Interactive, Inc. use at least some common servers and software to provide the Accused Products. Accordingly, Amazon.com, Inc., Amazon Web Services, Inc., and Twitch Interactive, Inc. are acting in concert to provide the Accused Products.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction over the claims asserted in this case under 28 U.S.C. §§ 1331 and 1338(a) and 35 U.S.C. § 271 *et seq*.

20.    This Court has personal jurisdiction over Amazon.com, Inc., Amazon Web Services, Inc., and Twitch Interactive, Inc. because they are incorporated in the State of Delaware. Personal jurisdiction also exists over each Defendant because each makes, uses, sells, offers for sale, imports, advertises, makes available, and/or markets products and/or services within Delaware, including this District, that infringe one or more claims of the Asserted Patents. Amazon.com, Inc., Amazon Web Services, Inc., and Twitch Interactive, Inc. provide video streaming and downloadable video services through web browsers, mobile applications, and television applications that are and have been used, offered for sale, sold, and purchased in Delaware.

21.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Plaintiffs and Defendants are each Delaware entities and Delaware is a convenient forum for resolution of the parties' disputes with respect to the counts alleged herein.

22.    In addition, Amazon maintains a regular and established place of business within this District. For example, and without limitation, Amazon has maintained a regular and established place of business with offices and/or other facilities located at 1025 Boxwood Rd., Wilmington, DE 19804. At 3.8 million square feet, it is the largest Amazon fulfilment center in the United States. https://www.delawareonline.com/story/money/business/2021/09/21/amazon-

opens-megawarehouse-delaware/8347000002/. Amazon additionally maintains offices in this District including at 560 Merrimac Ave 1437, Middletown, Delaware 19709 and 820 Federal School Lane, New Castle, Delaware 19720.

## FACTUAL BACKGROUND

### A.     Tom Katis' Pre-Voxer Experience

23.     Tom Katis, a co-founder of Voxer and a named inventor of the Asserted Patents, enlisted in the United States Army in 1988 after high school. While in the Army, Mr. Katis completed Special Forces training, including the highly technical Communications training to become a Special Forces Communications Specialist.

24.     After becoming a Green Beret, Mr. Katis transitioned to the National Guard and attended Yale University. After college, Mr. Katis continued working in technology, first at Citicorp where he co-founded the Internet Group and was a Vice President of Internet Payment Systems, and later in Silicon Valley at a start-up company through the dotcom boom and bust.

25.     After the terrorist attacks of September 11, 2001, Mr. Katis re-enlisted in the Army for two more years. In 2002 and 2003, Mr. Katis was deployed to Afghanistan as a Communication Specialist for his Special Forces team. During that time, Mr. Katis was responsible for coordinating all communications for his team, including with MEDEVAC, Close Air Support, Quick Reaction Forces, and Command.

26.     Push-to-talk radios were the primary form of communication used by the Army during Mr. Katis' deployment. While they work well in many circumstances, push-to-talk radios only provide effective communication when both parties are on the same channel and paying attention at the same time. If an intended transmission target is on a different channel than the sender, or is on the same channel but is not paying attention, then no effective communication can occur. Push-to-talk radios do not offer the ability to notify transmission targets of a communication

if they are on other channels, nor do they allow for the communication to be played or re-played in a non-live manner. Push-to-talk radios are therefore most useful for live communication (*e.g.*, when both parties are on the same channel and paying attention at the same time).

27.     In January 2003, Mr. Katis' Special Forces team was ambushed in the Kunar Province of Afghanistan. Two of Mr. Katis' teammates were wounded, and the team was stuck in the ambush zone for several hours. While everyone on Mr. Katis' team performed professionally and admirably during the ambush, the incident highlighted shortcomings of push-to-talk radios. For instance, during such a highly disruptive situation, Mr. Katis found it challenging to coordinate communications with multiple parties, including MEDEVAC, Close Air Support, Quick Reaction Forces, and Command, all of whom were on different channels. This was due in part to being limited to live communication with only those actively communicating on the same channel. Despite everyone on his team surviving the ambush, the event left a lasting impression on Mr. Katis.

28.     For his Special Forces service, Mr. Katis was awarded the Bronze Star.

**B.     Voxer's Creation and Early Technological Advancements**

29.     When Mr. Katis returned from Afghanistan, he set out to invent an improved communications system that could remedy the difficulties he experienced.

30.     Mr. Katis' Afghanistan experience made him realize that (a) the limitations of radio communication could have easily led to tragedy, and (b) there was a need for a more effective communication system and protocol. With tactical radios, communication is only live, meaning both sending and receiving radios must be tuned to the same channel and both parties must be available and present on the channel. Due to this requirement, radio communications have limitations, including: (i) no means for one party to notify other parties on different channels; (ii)

no convenient way to simultaneously conduct multiple conversations with multiple parties across channels; (iii) no means of recording and leaving a message for another party, and (iv) the requirement of having to constantly monitor any radio channel where you might need to receive an important message. These problems were all compounded in a harsh geographic environment like Afghanistan where the terrain (*e.g.*, mountains, valleys, caves) often made maintaining radio connectivity challenging. Mr. Katis pondered how he could build a system addressing the above-mentioned limitations to support time-sensitive communications with multiple groups in any situation, including a highly disruptive environment.

31.     Mr. Katis co-founded Voxer in 2007. From his experience in the Special Forces, Mr. Katis had the insight to realize that radio communication systems could be replaced by smart devices on data networks. He also saw an opportunity for improving communication systems in civilian life. Mr. Katis and his co-founders experimented with then-existing communication technologies and protocols in the hope of building a system with the attributes he was looking for. After an investigation, they determined this was not feasible with existing technologies, and as a result, they set out to design a new communication system and protocol.

32.     Mr. Katis' intention in starting Voxer was to develop a novel mode of communication that relied on smart devices on data networks. Voxer's groundbreaking technologies enabled transmission of voice and video communications with the immediacy of live communication, but with the advantages of messaging. These advantages included reliability, convenience, flexibility, ease of traversing firewalls and proxies, and significant improvements in scalability and significant bandwidth savings. Since Voxer's invention was a live communication system that also had attributes of a messaging system, new use cases could be employed. For example, users could conveniently participate in a conversation in either live mode or time-shifted

modes. As well, users could readily transition from one conversation to another. In addition, these technologies enabled transmission and reception under poor and varying network conditions and, if desired, could allow transmission regardless of recipient availability. Simply stated, Voxer's novel communication systems solved many of the communication issues experienced by Mr. Katis during his military deployments.

33.    Like conventional messaging, the Voxer solution involves the transmission of individual units of communication that include (i) identifier information for addressing target recipient(s), and (ii) media such as voice and/or video. However, unlike conventional messaging, Voxer's messages are progressively processed. With this innovative approach, the voice and/or video media of a message can be continuously transmitted by a sender and delivered and rendered by a recipient while the sender is creating the media. Hence, the voice and/or video media is consumed "live," which is not possible with conventional messaging. The use of store and forward protocols was considered completely asynchronous. The progressive nature of Voxer supports live messaging exchanges, like synchronous communication, without the need to first set up an end-to-end connection between the sending and recipient devices before any media can be transmitted. In addition, individual messages among a group of participants can be threaded together to create a conversation string.

34.    Voxer launched the iOS Voxer Walkie Talkie App and soon after Voxer launched the Android version of the App in 2011. Both versions are still available today. The Voxer Walkie Talkie App allows users to: (i) talk with other users "live" and listen to messages out of storage at their convenience in a time-shifted mode; and (ii) conduct or participate in multiple conversations. Shortly after its launch, the App experienced significant success.

35.    Voxer was almost immediately recognized as a "game-chang[er]," and celebrated

as an "overnight success" for its inventions.[6] Various media outlets concluded that the Voxer Walkie Talkie App was an "ingenious" "top social networking app" that went "fundamentally viral," in part because its communication system was "packed with features."[7] Early media also observed that Voxer "picked up a number of voice-related patents."[8] Users also caught on: the Voxer Walkie Talkie App was downloaded approximately 60 million times within the first year of its release and in 2012, its numbers of unique monthly users were in the double digit millions, and the Voxer Walkie Talkie App was named the Best Overall App in the First Annual Silicon Valley Business App Awards in 2013.[9]

### C.     Voxer's Prior Litigation Against Meta

36.     On January 7, 2020, Voxer filed a complaint against Facebook and Instagram (collectively, "Meta") in the Western District of Texas for infringement of five patents, including the '270 Patent and the '557 Patent asserted here. Ultimately, a jury found that the asserted patents were infringed and not invalid. The jury awarded $174.5 million in damages, and the parties settled in 2024 while Meta's appeal was pending.

37.     During the litigation, Meta filed petitions for *inter partes* review of the '270 Patent and '557 Patent. In both cases, institution was denied.

38.     Months after the district court denied its post-trial motions and shortly before filing

---

[6] https://www.fractuslearning.com/voxer-game-changing-app-pln; https://techcrunch.com/2012/04/11/walkie-talkie-app-voxer-goes-big-ivp-and-intel-lead-30-million-round.
[7] https://techcrunch.com/2012/04/11/walkie-talkie-app-voxer-goes-big-ivp-and-intel-lead-30-million-round; https://www.nytimes.com/2012/09/06/technology/personaltech/zello-heytell-and-voxer-make-your-smartphone-a-walkie-talkie-david-pogue.html.
[8] https://techcrunch.com/2012/04/11/walkie-talkie-app-voxer-goes-big-ivp-and-intel-lead-30-million-round.
[9] https://www.voxer.com/blog/voxer-business-named-best-overall-app-in-the-first-annual-silicon-valley-business-app-awards.

its opening appeal brief, Meta sought *ex parte* reexamination of the '270 Patent and the '557 Patent. The USPTO granted Meta's reexamination request, but the validity of the '270 Patent and '557 Patent claims was confirmed by the USPTO following *ex parte* reexamination without any amendments to the claims at issue in the Meta jury verdict.

### D.    Voxer's Patents

39.    Voxer applied for and has been granted over seventy United States patents since the company's inception. The Asserted Patents are just a few of those granted by the USPTO.

### 1.    U.S. Patent No. 10,142,270

40.    U.S. Patent No. 10,142,270 is entitled "Telecommunication and Multimedia Management Method and Apparatus" and issued on November 27, 2018. A true and correct copy of the '270 Patent, including its July 11, 2025 reexamination certificate, is attached as Exhibit A to this Complaint. Voxer, Inc. is the sole member and exclusive owner of Voxer IP LLC and enjoys complete control over the management and business affairs of Voxer IP LLC. Voxer IP LLC is the owner of all rights, title, and interest in and to the '270 Patent, with the full and exclusive right to file suit to enforce the '270 Patent, including the right to recover for past infringement. The '270 Patent is valid and enforceable under the United States patent laws.

41.    The '270 Patent relates to a "multimedia management method [...] that enables users to review the messages of conversations in either a live mode or a time-shifted mode and to transition the conversation back and forth between the two modes, participate in multiple conversations and to archive the messages of conversations for later review or processing." Ex. A ('270 Patent) at 1:28-35.

42.    Historically, there have been two distinct and mutually exclusive types of electronic communication protocols, synchronous communications and store-and-forward messaging. As the '270 Patent explains, "[t]he current state of voice communications suffers from inertia" in that it

requires either "wait[ing] for a connection to be made, and then engag[ing] in a full-duplex, synchronous conversation" or separate and burdensome "voice mail systems." *Id.* at 1:37-57; *see also id.* at 2:1-3 ("Current telephone systems are based on relatively simplistic usage patterns: real-time live calls or disjointed voice mail messages, which are typically deleted as they are heard."). This defect is present not just in traditional telephone technology but has persisted "[i]n spite of automated switching, high bandwidth networks and technologies such as satellites, fiber optics, Voice over IP (VoIP), wireless and cellular networks." *Id.* at 1:38-41.

43.     In response to these defects in existing communication systems, the '270 Patent inventors conceived a new, hybrid improved communication protocol and architecture that combines the benefits of both synchronous communications (*i.e.*, real-time or "live") and store-and-forward messaging, without the drawbacks (*e.g.*, synchronous communications requiring end-to-end connections). For instance, the '270 Patent describes how the then-existing "problems are solved by a communication application, method and apparatus that supports new modes of engaging in conversations and/or managing multiple conversations using a variety of media types, such as voice, video, text, location, sensor information, and other data. Users can engage in conversations by sending messages to designated recipients. Depending on preferences and priorities, the recipient(s) might participate in the conversation in real time, or they might simply be notified that the message is ready for retrieval. In the latter case, the recipient participates in the conversation in a time-shifted mode by reviewing and replying to the recorded message at their convenience." *Id.* at 4:10-22.

44.     The '270 Patent claims are not directed to an abstract idea or any patent-ineligible concept. The '270 Patent claims are directed to novel and unconventional improvements to the way computers operate through specific techniques for streaming media over networks. For

instance, Claim 34 addresses, *inter alia*, a specific improvement to the way computers operate, including by progressively transmitting streaming media over a network as the streaming media is created and stored without previously ascertaining the location of identified recipients, therefore enabling hybrid digital communications that can be both real-time and time-shifted; and by delivering media communication without first establishing an end-to-end connection over the network between the sender and receiver. Notable innovations include that (i) the video communication can be rendered at the recipient's communication device even while the video communication is still being transmitted by the sending communication device; and (ii) the use of an intermediate server infrastructure to store the video communications as they are being sent permits the delivery of video communications in a time shifted manner and in the absence of an end-to-end connection which is required for conventional video communication methods. *Id.* at 47:23-47.

45.     These improvements result in substantial benefits to both streaming media (voice and other media) network operators as well as users of those networks. *See, e.g.*, *id.* at 1:37-3:67; *see also id.* at 4:1-6 ("An improved voice and media communication and management system and method, and improvements in delivering voice and other media over packet-based networks, is therefore needed."). They produce an improved communication system that is flexible, adaptable, scalable, time-shifted, and real-time.

46.     The novel solution of the '270 Patent was not well-understood, routine, or conventional, nor was it simply comprised of well-understood, routine, and conventional activities previously known to the industry. The ordered combination of elements was also not well-understood, routine, or conventional and covers multiple advantages, and combinations of advantages, that were not well-understood, routine, or conventional. *Id.* at 4:10-39; 6:29-7:27;

9:24-37; 9:55-59; 10:42-55; 14:36-16:3; 17:34-18:52; 21:45-23:19; 23:21-24.37.

47.     The claimed invention of the '270 Patent cannot be performed as mental steps by a human. Nor do the claimed technologies represent the application of a generic computer to any well-known method of organizing human behavior.

48.     The district court in the Meta litigation confirmed that the '270 Patent claims cover patentable subject matter and are not directed to an abstract idea or any patent-ineligible concept. The Meta district court found that:

> 5. The '270 Patent addresses a specific improvement to the way computers operate, including by progressively transmitting streaming media over a network as the streaming media is created and persistently stored, therefore enabling hybrid digital communications that can be real-time and time-shifted; and by delivering video communication without first establishing an end-to-end connection over the network between the sender and receiver.
>
> 6. The improvement in existing communication systems is described as "delivering video communication without first establishing an end-to-end connection over the network between the sender and receiver."
>
> 7. This "enabl[es] users to participate in conversations without waiting for a connection to be established with another participant or the network" and "even when there is no network available, when the network is of poor quality, or other participants are unavailable."

49.     The Meta district court further held that:

> 22. Ultimately, based on the facts of this case, the claims themselves, and the claims as read in the context of the specification, the court concludes that Facebook has failed to show by clear-and-convincing evidence that the '270 Patent addresses only an abstract idea and presents no inventive concept. *See Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020).
>
> 23. At *Alice* Step One, the court concludes that the '270 Patent is directed to improvements to communications systems rather than an unpatentable abstract idea. *See Cellspin [Soft, Inv. v. Fitbit, Inc.*], 927 F.3d 1306 at 1319 [(Fed. Cir. 2019)].

50.     The USPTO's allowance of original '270 Patent claims, after granting Meta's *ex*

*parte* reexamination request, further confirms the patentable subject matter of the '270 Patent's claims as covering an inventive concept.

### 2. U.S. Patent No. 10,511,557

51.     U.S. Patent No. 10,511,557 is entitled "Telecommunication and Multimedia Management Method and Apparatus" and issued on December 17, 2019. A true and correct copy of the '557 Patent, including its April 30, 2025 reexamination certificate, is attached as Exhibit B to this Complaint. Voxer, Inc. is the sole member and exclusive owner of Voxer IP LLC and enjoys complete control over the management and business affairs of Voxer IP LLC. Voxer IP LLC is the owner of all rights, title, and interest in and to the '557 Patent, with the full and exclusive right to file suit to enforce the '557 Patent, including the right to recover for infringement. The '557 Patent is valid and enforceable under the United States patent laws.

52.     Like the '270 Patent, the '557 Patent relates to a "multimedia management method . . . that enables users to review the messages of conversations in either a live mode or a time-shifted mode and to transition the conversation back and forth between the two modes, participate in multiple conversations and to archive the messages of conversations for later review or processing." Ex. B ('557 Patent) at 1:33-41. The '557 Patent addresses and solves similar problems as the '270 Patent, and the above discussion regarding the '270 Patent is incorporated herein.

53.     The '557 Patent claims are not directed to an abstract idea or any patent-ineligible concept. The '557 Patent claims are directed to novel and unconventional improvements to the way computers operate through specific techniques for streaming media over networks. For instance, claim 1 addresses, *inter alia*, a specific improvement to the way computers operate, including by progressively transmitting streaming media over a network as the streaming media is created and stored, therefore enabling hybrid digital communications that can be both real-time and time-shifted; by generating two or more degraded versions of a streaming media and

transmitting an appropriate degraded version to each recipient. Notable innovations include that (i) the video communication can be rendered at the recipient's communication device even while the video communication is still being transmitted by the sending communication device; (ii) the use of an intermediate server infrastructure to store the video communications as they are being sent permits the delivery of video communications in a time shifted manner and in the absence of an end-to-end connection which is required for conventional video communication methods; and (iii) the generation and transmission of appropriate degraded versions of video communications. *Id.* at 44:27-56.

54.    These improvements result in substantial benefits to both streaming media (voice and other media) network operators as well as users of those networks. *See, e.g.*, *id.* at 1:45-4:7; *see also id.* at 4:8-13 ("An improved voice and media communication and management system and method, and improvements in delivering voice and other media over packet-based networks, is therefore needed."). They produce an improved communication system that is flexible, adaptable, scalable, time-shifted, and real-time.

55.    The novel solution of the '557 Patent was not well-understood, routine, or conventional, nor was it simply comprised of well-understood, routine, and conventional activities previously known to the industry. The ordered combination of elements was also not well-understood, routine, or conventional and covers multiple advantages, and combinations of advantages, that were not well-understood, routine, or conventional. *Id.* at 4:17-46; 6:36-7:34; 9:32-45; 9:63-67; 10:50-63; 14:40-16:7; 17:38-18:56; 21:49-23:22; 23:24-24:40. Moreover, the claimed technologies cannot be performed as mental steps by a human. Nor do the claimed technologies represent the application of a generic computer to any well-known method of organizing human behavior.

56.    While the patentability of the '557 Patent under Section 101 was not challenged in the Meta litigation, the district court's findings and reasoning as it relates to patentability of the '270 Patent (discussed above and incorporated by reference) apply to the '557 Patent. The USPTO's allowance of original '557 Patent claims, after granting Meta's *ex parte* reexamination request, similarly confirms the patentable subject matter of the '557 Patent's claims as covering an inventive concept.

### 3.    U.S. Patent No. 11,146,516

57.    U.S. Patent No. 11,146,516 is entitled "Telecommunication and Multimedia Management Method and Apparatus" and issued on October 12, 2021. A true and correct copy of the '516 Patent is attached as Exhibit C to this Complaint. Voxer, Inc. is the sole member and exclusive owner of Voxer IP LLC and enjoys complete control over the management and business affairs of Voxer IP LLC. Voxer IP LLC is the owner of all rights, title, and interest in and to the '516 Patent, with the full and exclusive right to file suit to enforce the '516 Patent, including the right to recover for infringement. The '516 Patent is valid and enforceable under the United States patent laws.

58.    Like the '270 Patent, the '516 Patent relates to a "multimedia management method . . . that enables users to review the messages of conversations in either a live mode or a time-shifted mode and to transition the conversation back and forth between the two modes, participate in multiple conversations and to archive the messages of conversations for later review or processing." Ex. C ('516 Patent) at 1:38-45. The '516 Patent addresses and solves similar problems as the '270 Patent, and the above discussion regarding the '270 Patent is incorporated herein.

59.    The '516 Patent claims are not directed to an abstract idea or any patent-ineligible concept. The '516 Patent claims are directed to novel and unconventional improvements to the way computers operate through specific techniques for streaming media over networks. For

instance, Claim 1 addresses, *inter alia*, a specific improvement to the way computers operate, including by progressively transmitting streaming media over a network as the streaming media is created and stored without previously ascertaining the location of identified recipients, and doing so using media segments, therefore enabling hybrid digital communications that can be both real-time and time-shifted; and by delivering media communication without first establishing an end-to-end connection over the network between the sender and receiver. Notable innovations include that (i) the video communication can be rendered at the recipient's communication device even while the video communication is still being transmitted by the sending communication device; (ii) the use of an intermediate server infrastructure to store the video communications as they are being sent permits the delivery of video communications in a time shifted manner and in the absence of an end-to-end connection which is required for conventional video communication methods; and (iii) the use of video segments to the claimed process. *Id.* at 44:33-63.

60.     These improvements result in substantial benefits to both streaming media (voice and other media) network operators as well as users of those networks. *See, e.g.*, *id.* at 1:49-4:11; *see also id.* at 4:12-17 ("An improved voice and media communication and management system and method, and improvements in delivering voice and other media over packet-based networks, is therefore needed."). They produce an improved communication system that is flexible, adaptable, scalable, time-shifted, and real-time.

61.     The novel solution of the '516 Patent was not well-understood, routine, or conventional, nor was it simply comprised of well-understood, routine, and conventional activities previously known to the industry. The ordered combination of elements was also not well-understood, routine, or conventional and covers multiple advantages, and combinations of advantages, that were not well-understood, routine, or conventional. *Id.* at 4:21-50; 6:37-7:39;

9:37-49; 10:1-5; 10:57-11:3; 14:49-15:15; 17:45-18:63; 21:58-28:31; 23:33-24:50. Moreover, the claimed technologies cannot be performed as mental steps by a human. Nor do the claimed technologies represent the application of a generic computer to any well-known method of organizing human behavior.

62.     While Voxer did not assert the '516 Patent in the Meta litigation, the district court's findings and reasoning as it relates to patentability of the '270 Patent (discussed above and incorporated by reference) apply to the '516 Patent and confirm that it claims patentable subject matter. The USPTO's allowance of original claims for the '270 and '557 Patents, after granting Meta's *ex parte* reexamination requests, similarly confirms the patentable subject matter of the '516 Patent's claims as covering an inventive concept.

### 4.    U.S. Patent No. 11,777,883

63.     U.S. Patent No. 11,777,883 (the "'883 Patent") is entitled "Telecommunication and Multimedia Management Method and Apparatus" and issued on October 3, 2023. A true and correct copy of the '883 Patent is attached as Exhibit D to this Complaint. Voxer, Inc. is the sole member and exclusive owner of Voxer IP LLC and enjoys complete control over the management and business affairs of Voxer IP LLC. Voxer IP LLC is the owner of all rights, title, and interest in and to the '883 Patent, with the full and exclusive right to file suit to enforce the '883 Patent, including the right to recover for infringement. The '883 Patent is valid and enforceable under the United States patent laws.

64.     Like the '270 Patent, the '883 Patent relates to a "multimedia management method . . . that enables users to review the messages of conversations in either a live mode or a time-shifted mode and to transition the conversation back and forth between the two modes, participate in multiple conversations and to archive the messages of conversations for later review or processing." Ex. D ('883 Patent) at 1:42-49. The '883 Patent addresses and solves similar problems

as the '270 Patent, and the above discussion regarding the '270 Patent is incorporated herein.

65. The '883 Patent claims are not directed to an abstract idea or any patent-ineligible concept. The '883 Patent claims are directed to novel and unconventional improvements to the way computers operate through specific techniques for streaming media over networks. For instance, Claim 1 addresses, *inter alia*, a specific improvement to the way computers operate, including by progressively transmitting streaming media over a network as the streaming media is created and stored without previously ascertaining the location of identified recipients, and doing so while allowing client devices to participate in a multimedia conversation, therefore enabling hybrid digital communications that can be both real-time and time-shifted; and by delivering media communication without first establishing an end-to-end connection over the network between the sender and receiver. Notable innovations include that (i) the video communication can be rendered at the recipient's communication device even while the video communication is still being transmitted by the sending communication device; (ii) the use of an intermediate server infrastructure to store the video communications as they are being sent permits the delivery of video communications in a time shifted manner and in the absence of an end-to-end connection which is required for conventional video communication methods; and (iii) the allowance of multimedia communication amongst client devices during the claimed process. *Id.* at 45:58-46:31.

66. These improvements result in substantial benefits to both streaming media (voice and other media) network operators as well as users of those networks. *See, e.g.*, *id.* at 1:53-4:15; *see also id.* at 4:16-21 ("An improved voice and media communication and management system and method, and improvements in delivering voice and other media over packet-based networks, is therefore needed."). They produce an improved communication system that is flexible, adaptable, scalable, time-shifted, and real-time.

67. The novel solution of the '883 Patent was not well-understood, routine, or conventional, nor was it simply comprised of well-understood, routine, and conventional activities previously known to the industry. The ordered combination of elements was also not well-understood, routine, or conventional and covers multiple advantages, and combinations of advantages, that were not well-understood, routine, or conventional. *Id.* at 4:25-54; 6:45-7:43; 9:45-58; 10:11-15; 11:13-26; 15:22-16:58; 18:32-19:51; 22:64-24:37; 24:39-25:55. Moreover, the claimed technologies cannot be performed as mental steps by a human. Nor do the claimed technologies represent the application of a generic computer to any well-known method of organizing human behavior.

68. While Voxer did not assert the '883 Patent in the Meta litigation, the district court's findings and reasoning as it relates to patentability of the '270 Patent (discussed above and incorporated by reference) apply to the '833 Patent and confirm that it claims patentable subject matter. The USPTO's allowance of original claims for the '270 and '557 Patents, after granting Meta's *ex parte* reexamination requests, similarly confirms the patentable subject matter of the '883 Patent's claims as covering an inventive concept.

### 5.     U.S. Patent No. 11,658,929

69. U.S. Patent No. 11,658,929 (the "'929 Patent") is entitled "Telecommunication and Multimedia Management Method and Apparatus" and issued on May 23, 2023. A true and correct copy of the '929 Patent is attached as Exhibit E to this Complaint. Voxer, Inc. is the sole member and exclusive owner of Voxer IP LLC and enjoys complete control over the management and business affairs of Voxer IP LLC. Voxer IP LLC is the owner of all rights, title, and interest in and to the '929 Patent, with the full and exclusive right to file suit to enforce the '929 Patent, including the right to recover for infringement. The '929 Patent is valid and enforceable under the United States patent laws.

70.     Like the '270 Patent, the '929 Patent relates to a "multimedia management method . . . that enables users to review the messages of conversations in either a live mode or a time-shifted mode and to transition the conversation back and forth between the two modes, participate in multiple conversations and to archive the messages of conversations for later review or processing." Ex. E ('929 Patent) at 1:44-51. The '929 Patent addresses and solves similar problems as the '270 Patent, and the above discussion regarding the '270 Patent is incorporated herein.

71.     The '929 Patent claims are not directed to an abstract idea or any patent-ineligible concept. The '929 Patent claims are directed to novel and unconventional improvements to the way computers operate through specific techniques for streaming media over networks. For instance, Claim 1 addresses, *inter alia*, a specific improvement to the way computers operate, including by progressively transmitting streaming media over a network as the streaming media is created and stored without previously ascertaining the location of identified recipients, and doing so while allowing client devices to participate in a multimedia conversation, therefore enabling hybrid digital communications that can be both real-time and time-shifted; and by delivering media communication without first establishing an end-to-end connection over the network between the sender and receiver. Notable innovations include that (i) the video communication can be rendered at the recipient's communication device even while the video communication is still being transmitted by the sending communication device; (ii) the use of an intermediate server infrastructure to store the video communications as they are being sent permits the delivery of video communications in a time shifted manner and in the absence of an end-to-end connection which is required for conventional video communication methods; and (iii) the allowance of multimedia communication amongst client devices during the claimed process. *Id.* at 45:58-46:31.

72.     These improvements result in substantial benefits to both streaming media (voice

and other media) network operators as well as users of those networks. *See, e.g.*, *id.* at 1:55-4:17; *see also id.* at 4:18-23 ("An improved voice and media communication and management system and method, and improvements in delivering voice and other media over packet-based networks, is therefore needed."). They produce an improved communication system that is flexible, adaptable, scalable, time-shifted, and real-time.

73.    The novel solution of the '929 Patent was not well-understood, routine, or conventional, nor was it simply comprised of well-understood, routine, and conventional activities previously known to the industry. The ordered combination of elements was also not well-understood, routine, or conventional and covers multiple advantages, and combinations of advantages, that were not well-understood, routine, or conventional. *Id.* at 4:27-56; 6:45-7:43; 9:45-58; 10:11-15; 11:13-26; 15:22-16:58; 18:32-19:51; 22:64-24:37; 24:39-25:55. Moreover, the claimed technologies cannot be performed as mental steps by a human. Nor do the claimed technologies represent the application of a generic computer to any well-known method of organizing human behavior.

74.    Voxer did not assert the '929 Patent in the Meta litigation, but the district court's findings and reasoning as it relates to patentability of the '270 Patent (discussed above and incorporated by reference) apply to the '929 Patent and confirm that it claims patentable subject matter. The USPTO's allowance of original claims for the '270 and '557 Patents, after granting Meta's *ex parte* reexamination requests, similarly confirms the patentable subject matter of the '929 Patent's claims as covering an inventive concept.

## **AMAZON'S INFRINGEMENT**

75.    Amazon infringes claims of each of the Asserted Patents by engaging in acts constituting infringement under 35 U.S.C. § 271, including but not necessarily limited to one or more of making, using, selling, and offering to sell, in this District and elsewhere in the United

States, and importing into the United Stated the Accused Products.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,142,270

76.     Voxer incorporates by reference the preceding paragraphs as though fully set forth herein.

77.     Amazon has directly infringed and continues to infringe one or more claims of the '270 Patent by making, using, selling, offering for sale, and/or importing, without authority or license, into the United States the Accused Products, devices running the Accused Products, and systems, servers, and services used with the Accused Products in the United States, including in this District, in violation 35 U.S.C. § 271(a). The Accused Products are non-limiting examples that were identified based on publicly available information, and Voxer reserves the right to identify additional infringing activities, products, and services, including based on information obtained during discovery.

78.     Amazon also actively, knowingly, and intentionally induces infringement of one or more claims of the '270 Patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, sell, offer to sell, and/or import in the United States, the Accused Products or products containing infringing components of the Accused Products.[10] *See also* Ex. F (including, *inter alia*, exemplary instructions from Amazon).

79.     Amazon further contributes to the infringement of one or more claims of the '270 Patent under 35 U.S.C. § 271(c) by offering to sell and selling components of the Accused

---

[10]https://www.twitch.tv/creatorcamp/en/?utm_referrer=https%3A%2F%2Fwww.twitch.tv%2Fcreatorcamp%2Fen%2Fpaths%2Fgetting-started-on-twitch%2Ftwitch-101%2F; https://www.twitch.tv/creatorcamp/en/level1/going-live/; https://www.twitch.tv/creatorcamp/en/level1/establish-your-brand/engaging-viewers/; https://advertising.amazon.com/library/guides/twitch-ads; https://www.amazon.com/twitch-interactive-inc/dp/b007soqbcm; https://www.amazon.com/gp/help/customer/display.html?nodeId=GEZHHTM8ZRSZRQQC.

Products, or a material apparatus for use in practicing a process claimed in the '270 Patent, that constitutes a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the '270 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.[11] *See also* Ex. F (including, *inter alia*, exemplary instructions from Amazon).

80.     On information and belief, by at least 2018, Amazon was aware of the '270 Patent and its relevance to Amazon based on Amazon's knowledge of Voxer and investigation into Voxer's patents such as the '270 Patent and its family members.

81.     By at least January 7, 2020, Amazon had notice of the '270 Patent because it was asserted by Voxer in its complaint against Meta, which was publicly accessible, widely publicized, and known by industry participants.

82.     Moreover, by at least the date of the filing of this Complaint, Amazon was made aware of the '270 Patent and Amazon's infringement thereof.

83.     The Accused Products meet all the limitations of at least claim 34 of the '270 Patent. A chart presenting a non-limiting example of Defendants' infringement of claim 34 of the '270 Patent is attached to this Complaint as Exhibit F. Claim 34 reads as follows:

> 34. A video communication method, comprising:
>
> receiving an identifier associated with a video communication transmitted by a sending communication device over a network, the identifier identifying a recipient of the video communication.

---

[11]https://www.twitch.tv/creatorcamp/en/?utm_referrer=https%3A%2F%2Fwww.twitch.tv%2Fcreatorcamp%2Fen%2Fpaths%2Fgetting-started-on-twitch%2Ftwitch-101%2F; https://www.twitch.tv/creatorcamp/en/level1/going-live/; https://www.twitch.tv/creatorcamp/en/level1/establish-your-brand/engaging-viewers/; https://advertising.amazon.com/library/guides/twitch-ads; https://www.amazon.com/twitch-interactive-inc/dp/b007soqbcm; https://www.amazon.com/gp/help/customer/display.html?nodeId=GEZHHTM8ZRSZRQQC.

ascertaining, in response to receipt of the identifier, a location on the network for a second communication device associated with the recipient and connected to the network;

receiving the video communication from the sending communication device independently of the location for the second communication device being ascertained;

storing the video communication; and

delivering portions of the video communication over the network to the second noncommunication device using the location, the delivery enabling the video communication to be at least partially rendered at the second communication device while the video communication is transmitted by the sending communication device,

wherein receiving the video communication from the sending communication device occurs without having to first establish an end-to-end connection over the network between the sending and the second communication device.

84.     The foregoing allegations are based on publicly available information and a reasonable investigation of the structure and operation of the Accused Products. Voxer reserves the right to modify this description, including based on information obtained during discovery.

85.     Voxer has complied with any applicable marking requirements under 35 U.S.C. § 287.

86.     Amazon's infringement has damaged and continues to damage Voxer in an amount yet to be determined, of at least a reasonable royalty and the lost profits that Voxer would have made but for Amazon's infringing acts.

87.     Amazon's acts of infringement are willful and in disregard for the '270 Patent, without any reasonable basis for believing that it has a right to engage in the infringing conduct. Amazon continues to infringe the '270 Patent.

88.     Upon information and belief, Amazon derives revenue, directly and indirectly, from the activities relating to the Accused Products, including their importation, testing,

manufacture, use, sale, and offer for sale.

89.    This is an exceptional case. Voxer is entitled to attorneys' fees and costs under 35 U.S.C. § 285 as a result of the infringement of the '270 Patent by Amazon.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,511,557

90.    Voxer incorporates by reference the preceding paragraphs as though fully set forth herein.

91.    Amazon has directly infringed and continues to infringe one or more claims of the '557 Patent by making, using, selling, offering for sale, and/or importing, without authority or license, into the United States the Accused Products, devices running the Accused Products, and systems, servers, and services used with the Accused Products in the United States, including in this District, in violation 35 U.S.C. § 271(a). The Accused Products are non-limiting examples that were identified based on publicly available information, and Voxer reserves the right to identify additional infringing activities, products, and services, including, for example, based on information obtained during discovery.

92.    Amazon also actively, knowingly, and intentionally induces infringement of one or more claims of the '557 Patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, sell, offer to sell, and/or import in the United States, the Accused Products or products containing infringing components of the Accused Products.[12] *See also* Ex. G (including, *inter alia*, exemplary instructions from Amazon).

---

[12]https://www.twitch.tv/creatorcamp/en/?utm_referrer=https%3A%2F%2Fwww.twitch.tv%2Fcreatorcamp%2Fen%2Fpaths%2Fgetting-started-on-twitch%2Ftwitch-101%2F;
https://www.twitch.tv/creatorcamp/en/level1/going-live/;
https://www.twitch.tv/creatorcamp/en/level1/establish-your-brand/engaging-viewers/;
https://advertising.amazon.com/library/guides/twitch-ads; https://www.amazon.com/twitch-interactive-inc/dp/b007soqbcm;
https://www.amazon.com/gp/help/customer/display.html?nodeId=GEZHHTM8ZRSZRQQC.

93.    Amazon further contributes to the infringement of one or more claims of the '557 Patent under 35 U.S.C. § 271(c) by offering to sell and selling components of the Accused Products, or a material apparatus for use in practicing a process claimed in the '557 Patent, that constitutes a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the '557 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.[13] *See also* Ex. G (including, *inter alia*, exemplary instructions from Amazon).

94.    On information and belief, by at least 2018, Amazon was aware of the '557 Patent (including its application) and its relevance to Amazon based on Amazon's knowledge of Voxer and investigation into Voxer's patents such as the '557 Patent.

95.    By at least January 7, 2020, Amazon had notice of the '557 Patent because it was asserted by Voxer in its complaint against Meta, which was publicly accessible, widely publicized, and known by industry participants.

96.    Moreover, by at least the date of the filing of this Complaint, Amazon was made aware of the '557 Patent and Amazon's infringement thereof.

97.    The Accused Products meet all the limitations of at least claim 1 of the '557 Patent. A chart presenting a non-limiting example of Defendants' infringement of claim 1 of the '557 Patent is attached to this Complaint as Exhibit G. Claim 1 reads as follows:

> 1. A method for operating a video message service infrastructure on a network, the method comprising:

---

[13]https://www.twitch.tv/creatorcamp/en/?utm_referrer=https%3A%2F%2Fwww.twitch.tv%2Fcreatorcamp%2Fen%2Fpaths%2Fgetting-started-on-twitch%2Ftwitch-101%2F; https://www.twitch.tv/creatorcamp/en/level1/going-live/; https://www.twitch.tv/creatorcamp/en/level1/establish-your-brand/engaging-viewers/; https://advertising.amazon.com/library/guides/twitch-ads; https://www.amazon.com/twitch-interactive-inc/dp/b007soqbcm; https://www.amazon.com/gp/help/customer/display.html?nodeId=GEZHHTM8ZRSZRQQC.

receiving, at the video message service infrastructure, a video message transmitted by a sending device, the video message containing video media, the video media being transmitted as the video media is created;

generating, by the video message service infrastructure, two or more degraded versions of the video media of the video message, where each of the two or more degraded versions is created by degrading the quality of the video media by a different amount;

selecting one of the degraded versions of the video media based on an ascertained bandwidth on the network for delivering the video media from the video message service infrastructure to a recipient device on the network; and

transmitting the selected degraded version of the video media from the video message service infrastructure to the recipient device so that the recipient device can render at least a portion of the video media on the recipient device, the video message service infrastructure operating so that the rendering occurs:

(i) while the video media of the video message is being created and transmitted over the network by the sending device; and

(ii) without having to first establish an end-to-end connection over the network between the sending device and the recipient device before the sending device begins to transmit the video media of the video message.

98.     The foregoing allegations are based on publicly available information and a reasonable investigation of the structure and operation of the Accused Products. Voxer reserves the right to modify this description, including based on information obtained during discovery.

99.     Voxer has complied with any applicable marking requirements under 35 U.S.C. § 287.

100.    Amazon's infringement has damaged and continues to damage Voxer in an amount yet to be determined, of at least a reasonable royalty and the lost profits that Voxer would have made but for Amazon's infringing acts.

101.    Amazon's acts of infringement are willful and in disregard for the '557 Patent,

without any reasonable basis for believing that it has a right to engage in the infringing conduct. Amazon continues to infringe the '557 Patent.

102.    Upon information and belief, Amazon derives revenue, directly and indirectly, from the activities relating to the Accused Products, including their importation, testing, manufacture, use, sale, and offer for sale.

103.    This is an exceptional case. Voxer is entitled to attorneys' fees and costs under 35 U.S.C. § 285 as a result of the infringement of the '557 patent by Amazon.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 11,146,516

104.    Voxer incorporates by reference the preceding paragraphs as though fully set forth herein.

105.    Amazon has directly infringed and continues to infringe one or more claims of the '516 Patent by making, using, selling, offering for sale, and/or importing, without authority or license, into the United States the Accused Products, devices running the Accused Products, and systems, servers, and services used with the Accused Products in the United States, including in this District, in violation 35 U.S.C. § 271(a). The Accused Products are non-limiting examples that were identified based on publicly available information, and Voxer reserves the right to identify additional infringing activities, products, and services, including, for example, based on information obtained during discovery.

106.    Amazon also actively, knowingly, and intentionally induces infringement of one or more claims of the '516 Patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, sell, offer to sell, and/or import in the United States, the Accused Products or products containing infringing components of the Accused Products.[14] *See also* Ex. H (including, *inter alia*,

---

[14]https://www.twitch.tv/creatorcamp/en/?utm_referrer=https%3A%2F%2Fwww.twitch.tv%2Fcreatorcamp%2Fen%2Fpaths%2Fgetting-started-on-twitch%2Ftwitch-101%2F;

exemplary instructions from Amazon).

107. Amazon further contributes to the infringement of one or more claims of the '516 Patent under 35 U.S.C. § 271(c) by offering to sell and selling components of the Accused Products, or a material apparatus for use in practicing a process claimed in the '516 Patent, that constitutes a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the '516 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.[15] *See also* Ex. H (including, *inter alia*, exemplary instructions from Amazon).

108. On information and belief, by at least 2018, Amazon was aware of family members of the '516 Patent (including its application) and its relevance to Amazon based on Amazon's knowledge of Voxer and investigation into Voxer's patents such as the '516 Patent.

109. By at least the date of the filing of this Complaint, Amazon was made aware of the '516 Patent and Amazon's infringement thereof.

110. The Accused Products meet all the limitations of at least claim 1 of the '516 Patent. A chart presenting a non-limiting example of Defendants' infringement of claim 1 of the '516 Patent is attached to this Complaint as Exhibit H. Claim 1 reads as follows:

---

https://www.twitch.tv/creatorcamp/en/level1/going-live/;
https://www.twitch.tv/creatorcamp/en/level1/establish-your-brand/engaging-viewers/;
https://advertising.amazon.com/library/guides/twitch-ads; https://www.amazon.com/twitch-interactive-inc/dp/b007soqbcm;
https://www.amazon.com/gp/help/customer/display.html?nodeId=GEZHHTM8ZRSZRQQC.
[15]https://www.twitch.tv/creatorcamp/en/?utm_referrer=https%3A%2F%2Fwww.twitch.tv%2Fcreatorcamp%2Fen%2Fpaths%2Fgetting-started-on-twitch%2Ftwitch-101%2F;
https://www.twitch.tv/creatorcamp/en/level1/going-live/;
https://www.twitch.tv/creatorcamp/en/level1/establish-your-brand/engaging-viewers/;
https://advertising.amazon.com/library/guides/twitch-ads; https://www.amazon.com/twitch-interactive-inc/dp/b007soqbcm;
https://www.amazon.com/gp/help/customer/display.html?nodeId=GEZHHTM8ZRSZRQQC.

1. A method for operating a video message service infrastructure on a network, the method comprising:

receiving, at the video message service infrastructure, a video message transmitted by a sending device, video media of the video message transmitted as the video media is created;

transmitting the video media of the video message from the video message service infrastructure to a recipient device so that a recipient can render at least a portion of the video media of the video message on the recipient device, the video message service infrastructure operating so that the rendering occurring:

(i) while the video media of the video message is being created and transmitted over the network by the sending device; and

(ii) without having to first establish an end-to-end connection over the network between the sending device and the recipient device before the sending device begins to transmit the video media of the video message,

wherein the video media of the video message is segmented into a plurality of segments, the plurality of segments containing content of the video media, the plurality of segments are received at the video message service infrastructure while streamed by the sending device, stored by the video message service infrastructure, and at least some of the segments are streamed to the recipient so that the recipient can render at least the portion of the video media of the video message on the recipient device while (i) is occurring and without first establish the end-to-end connection of (ii).

111. The foregoing allegations are based on publicly available information and a reasonable investigation of the structure and operation of the Accused Products. Voxer reserves the right to modify this description, including based on information obtained during discovery.

112. Voxer has complied with any applicable marking requirements under 35 U.S.C. § 287.

113. Amazon's infringement has damaged and continues to damage Voxer in an amount yet to be determined, of at least a reasonable royalty and the lost profits that Voxer would have made but for Amazon's infringing acts.

114.    Amazon's acts of infringement are willful and in disregard for the '516 Patent, without any reasonable basis for believing that it has a right to engage in the infringing conduct. Amazon continues to infringe the '516 Patent.

115.    Upon information and belief, Amazon derives revenue, directly and indirectly, from the activities relating to the Accused Products, including their importation, testing, manufacture, use, sale, and offer for sale.

116.    This is an exceptional case. Voxer is entitled to attorneys' fees and costs under 35 U.S.C. § 285 as a result of the infringement of the '516 Patent by Amazon.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 11,777,883

117.    Voxer incorporates by reference the preceding paragraphs as though fully set forth herein.

118.    Amazon has directly infringed and continues to infringe one or more claims of the '883 Patent by making, using, selling, offering for sale, and/or importing, without authority or license, into the United States the Accused Products, devices running the Accused Products, and systems, servers, and services used with the Accused Products in the United States, including in this District, in violation 35 U.S.C. § 271(a). The Accused Products are non-limiting examples that were identified based on publicly available information, and Voxer reserves the right to identify additional infringing activities, products, and services, including, for example, based on information obtained during discovery.

119.    Amazon also actively, knowingly, and intentionally induces infringement of one or more claims of the '883 Patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, sell, offer to sell, and/or import in the United States, the Accused Products or products

containing infringing components of the Accused Products.[16] *See also* Ex. I (including, *inter alia*, exemplary instructions from Amazon).

120.    Amazon further contributes to the infringement of one or more claims of the '883 Patent under 35 U.S.C. § 271(c) by offering to sell and selling components of the Accused Products, or a material apparatus for use in practicing a process claimed in the '883 Patent, that constitutes a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the '883 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.[17] *See also* Ex. I (including, *inter alia*, exemplary instructions from Amazon).

121.    On information and belief, by at least 2018, Amazon was aware of family members of the '883 Patent (including its application) and its relevance to Amazon based on Amazon's knowledge of Voxer and investigation into Voxer's patents such as the '883 Patent.

122.    By at least the date of the filing of this Complaint, Amazon was made aware of the '883 Patent and Amazon's infringement thereof.

123.    The Accused Products meet all the limitations of at least claim 1 of the '883 Patent.

---

[16]https://www.twitch.tv/creatorcamp/en/?utm_referrer=https%3A%2F%2Fwww.twitch.tv%2Fcreatorcamp%2Fen%2Fpaths%2Fgetting-started-on-twitch%2Ftwitch-101%2F;
https://www.twitch.tv/creatorcamp/en/level1/going-live/;
https://www.twitch.tv/creatorcamp/en/level1/establish-your-brand/engaging-viewers/;
https://advertising.amazon.com/library/guides/twitch-ads; https://www.amazon.com/twitch-interactive-inc/dp/b007soqbcm;
https://www.amazon.com/gp/help/customer/display.html?nodeId=GEZHHTM8ZRSZRQQC.
[17]https://www.twitch.tv/creatorcamp/en/?utm_referrer=https%3A%2F%2Fwww.twitch.tv%2Fcreatorcamp%2Fen%2Fpaths%2Fgetting-started-on-twitch%2Ftwitch-101%2F;
https://www.twitch.tv/creatorcamp/en/level1/going-live/;
https://www.twitch.tv/creatorcamp/en/level1/establish-your-brand/engaging-viewers/;
https://advertising.amazon.com/library/guides/twitch-ads; https://www.amazon.com/twitch-interactive-inc/dp/b007soqbcm;
https://www.amazon.com/gp/help/customer/display.html?nodeId=GEZHHTM8ZRSZRQQC.

A chart presenting a non-limiting example of Defendants' infringement of claim 1 of the '883 Patent is attached to this Complaint as Exhibit I. Claim 1 reads as follows:

1. A method comprising:

maintaining a communication infrastructure on a network;

receiving, at the communication infrastructure, information from a first client device used by an initiating participant, the information for forwarding video media of a video message, the video message initiating a multi-media conversation,

using the information at the communication infrastructure for forwarding the video message by:

(i) ascertaining second participants for participation in the multi-media conversation using the information;

(ii) providing notifications to second client devices located on the network and associated with one or more of the second participants respectively; and

(iii) streaming, by the communication infrastructure, at least portions of the video media of the video message to one or more of the second client devices as the video media of the video message is streamed by the first client device, received at the communication infrastructure, and stored by the communication infrastructure,

the streaming of the video media of the video message by the communication infrastructure enabling the one or more second client devices to render the at least portions of the video media of the video message in a real-time mode:

(a) while the video media of the video message is streamed by the first client device; and

(b) without first setting up an end-to-end connection over the network between the first client device and any of the one or more second client devices respectively; and

enabling the one or more second participants that have joined the multi-media conversation, during the rendering of the video media of the video message in the real-time mode, to:

(i) selectively add to the multi-media conversation one or more additional messages that are generated in response the video message; and

(ii) render the one or more additional messages that are generated in response with the video message.

124. The foregoing allegations are based on publicly available information and a reasonable investigation of the structure and operation of the Accused Products. Voxer reserves the right to modify this description, including based on information obtained during discovery.

125. Voxer has complied with any applicable marking requirements under 35 U.S.C. § 287.

126. Amazon's infringement has damaged and continues to damage Voxer in an amount yet to be determined, of at least a reasonable royalty and the lost profits that Voxer would have made but for Amazon's infringing acts.

127. Amazon's acts of infringement are willful and in disregard for the '883 Patent, without any reasonable basis for believing that it has a right to engage in the infringing conduct. Amazon continues to infringe the '883 Patent.

128. Upon information and belief, Amazon derives revenue, directly and indirectly, from the activities relating to the Accused Products, including their importation, testing, manufacture, use, sale, and offer for sale.

129. This is an exceptional case. Voxer is entitled to attorneys' fees and costs under 35 U.S.C. § 285 as a result of the infringement of the '883 Patent by Amazon.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 11,658,929

130. Voxer incorporates by reference the preceding paragraphs as though fully set forth herein.

131. Amazon has directly infringed and continues to infringe one or more claims of the '929 Patent by making, using, selling, offering for sale, and/or importing, without authority or license, into the United States the Accused Products, devices running the Accused Products, and

systems, servers, and services used with the Accused Products in the United States, including in this District, in violation 35 U.S.C. § 271(a). The Accused Products are non-limiting examples that were identified based on publicly available information, and Voxer reserves the right to identify additional infringing activities, products, and services, including, for example, based on information obtained during discovery.

132.    Amazon also actively, knowingly, and intentionally induces infringement of one or more claims of the '929 Patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, sell, offer to sell, and/or import in the United States, the Accused Products or products containing infringing components of the Accused Products.[18] *See also* Ex. J (including, *inter alia*, exemplary instructions from Amazon).

133.    Amazon further contributes to the infringement of one or more claims of the '929 Patent under 35 U.S.C. § 271(c) by offering to sell and selling components of the Accused Products, or a material apparatus for use in practicing a process claimed in the '929 Patent, that constitutes a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the '929 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.[19] *See also* Ex. J (including, *inter alia*,

---

[18]https://www.twitch.tv/creatorcamp/en/?utm_referrer=https%3A%2F%2Fwww.twitch.tv%2Fcreatorcamp%2Fen%2Fpaths%2Fgetting-started-on-twitch%2Ftwitch-101%2F;
https://www.twitch.tv/creatorcamp/en/level1/going-live/;
https://www.twitch.tv/creatorcamp/en/level1/establish-your-brand/engaging-viewers/;
https://advertising.amazon.com/library/guides/twitch-ads; https://www.amazon.com/twitch-interactive-inc/dp/b007soqbcm;
https://www.amazon.com/gp/help/customer/display.html?nodeId=GEZHHTM8ZRSZRQQC.
[19]https://www.twitch.tv/creatorcamp/en/?utm_referrer=https%3A%2F%2Fwww.twitch.tv%2Fcreatorcamp%2Fen%2Fpaths%2Fgetting-started-on-twitch%2Ftwitch-101%2F;
https://www.twitch.tv/creatorcamp/en/level1/going-live/;
https://www.twitch.tv/creatorcamp/en/level1/establish-your-brand/engaging-viewers/;
https://advertising.amazon.com/library/guides/twitch-ads; https://www.amazon.com/twitch-

exemplary instructions from Amazon).

134.    On information and belief, by at least 2018, Amazon was aware of family members of the '929 Patent (including its application) and its relevance to Amazon based on Amazon's knowledge of Voxer and investigation into Voxer's patents such as the '929 Patent.

135.    By at least the date of the filing of this Complaint, Amazon was made aware of the '929 Patent and Amazon's infringement thereof.

136.    The Accused Products meet all the limitations of at least claim 1 of the '929 Patent. A chart presenting a non-limiting example of Defendants' infringement of claim 1 of the '929 Patent is attached to this Complaint as Exhibit J. Claim 1 reads as follows:

> 1. A method, comprising:
>
> deploying a communication infrastructure including a plurality of servers on a network, the communication infrastructure enabling participation in a multi-media messaging conversation by:
>
> (a) receiving, at the communication infrastructure, information from a first device associated with a first user, the information usable by the communication infrastructure for determining and notifying one or more second users of the communication infrastructure of a video message streamed by the first device to the communication infrastructure;
>
> (b) ascertaining one or more second devices associated with the one or more second users and providing the notification of the video message to the one or more second users respectively;
>
> (c) streaming, via the communication infrastructure, at least portions of video media of the video message to one or more of the second devices as the first device is streaming the video media of the video message to the communication infrastructure;
>
> (d) enabling one or more of the second users to selectively render at least portions of the video media of the video message in a real-time mode on the one or more second devices without having to first

---

interactive-inc/dp/b007soqbcm;
https://www.amazon.com/gp/help/customer/display.html?nodeId=GEZHHTM8ZRSZRQQC.

establish an end-to-end connection over the network between the first device and any of the second devices respectively;

(e) enabling the first user and the one or more second users to selectively contribute one or more additional messages to the multi-media messaging conversation;

(f) assembling the one or more additional messages into a string of messages;

(h) associating the video message and the string of messages; and

(i) enabling the participation in the multi-media messaging conversation by enabling the one or more second users to selectively render the video message in the real-time mode or a time-shifted mode and enabling the first user and the one or more second users to selectively render or contribute to the one or more additional messages assembled into the string of messages.

137.    The foregoing allegations are based on publicly available information and a reasonable investigation of the structure and operation of the Accused Products. Voxer reserves the right to modify this description, including based on information obtained during discovery.

138.    Voxer has complied with any applicable marking requirements under 35 U.S.C. § 287.

139.    Amazon's infringement has damaged and continues to damage Voxer in an amount yet to be determined, of at least a reasonable royalty and the lost profits that Voxer would have made but for Amazon's infringing acts.

140.    Amazon's acts of infringement are willful and in disregard for the '929 Patent, without any reasonable basis for believing that it has a right to engage in the infringing conduct. Amazon continues to infringe the '929 Patent.

141.    Upon information and belief, Amazon derives revenue, directly and indirectly, from the activities relating to the Accused Products, including their importation, testing, manufacture, use, sale, and offer for sale.

142.    This is an exceptional case. Voxer is entitled to attorneys' fees and costs under 35 U.S.C. § 285 as a result of the infringement of the '929 Patent by Amazon.

## REQUEST FOR JURY TRIAL

143.    Voxer requests a jury trial of all issues in this action so triable.

## PRAYER FOR RELIEF

WHEREFORE, Voxer respectfully requests that this Court enter judgment in its favor as follows and afford Voxer the following relief:

A.    That judgment be entered that Amazon has infringed one or more claims of the Asserted Patents, directly or indirectly, literally or under the doctrine of equivalents;

B.    That judgment be entered that Amazon's infringement of one or more claims of the Asserted Patents was willful, and that Amazon's continued infringement of one or more claims of the Asserted Patents is willful;

C.    That, in accordance with 35 U.S.C. § 283, Amazon and its affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in active concert or participation with any of them be preliminary and permanently enjoined from (1) infringing the Asserted Patents and (2) making, using, selling and offering for sale the Accused Products.

D.    An award of damages sufficient to compensate Voxer for Amazon's infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Amazon's willful infringement;

E.    Costs and expenses in this action;

F.    An award of prejudgment and post-judgment interest;

G.    That the case be found exceptional under 35 U.S.C. § 285 and that Voxer be awarded its reasonable attorneys' fees; and

H.     Such other and further relief as the Court may deem just and proper.

Dated: July 14, 2025

Of Counsel:

Kyle A. Lonergan
Eliza Beeney
**McKool Smith, P.C.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 402-9400
klonergan@McKoolSmith.com
ebeeney@McKoolSmith.com

Nicholas Mathews
Warren Lipschitz
**McKool Smith, P.C.**
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
nmathews@McKoolSmith.com
wlipschitz@McKoolSmith.com

James Quigley
**McKool Smith, P.C.**
303 Colorado Street, Suite 2100
Austin, TX 78701
Telephone: (512) 692-8752
jquigley@mckoolsmith.com

Clara Bourget
**McKool Smith, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, CA 75670
Telephone: (213) 694-1200
cbourget@McKoolSmith.com

Respectfully submitted,

FARNAN LLP

*/s/ Michael J. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs*