# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VOXER, INC. AND VOXER IP LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>AMAZON.COM, INC., AMAZON WEB SERVICES, INC., AND TWITCH INTERACTIVE, INC.,<br><br>    Defendants. | Case No. 25-cv-872-GBW |
| VOXER, INC. AND VOXER IP LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOOGLE, LLC AND YOUTUBE, LLC,<br>    Defendants. | Case No. 25-cv-873-GBW |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' LETTER TO THE HONORABLE GREGORY B. WILLIAMS REGARDING PROTECTIVE ORDER DISPUTES

Dated: March 6, 2026

Of Counsel:

Kyle A. Lonergan
Eliza Beeney
**McKool Smith, P.C.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 402-9400
klonergan@McKoolSmith.com
ebeeney@McKoolSmith.com

Nicholas Mathews
Warren Lipschitz
**McKool Smith, P.C.**

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs Voxer, Inc. and Voxer IP LLC*

300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
nmathews@McKoolSmith.com
wlipschitz@McKoolSmith.com

James Quigley
**McKool Smith, P.C.**
303 Colorado Street, Suite 2100
Austin, TX 78701
Telephone: (512) 692-8700
jquigley@mckoolsmith.com

Clara Bourget
**McKool Smith, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, CA 75670
Telephone: (213) 694-1200
cbourget@McKoolSmith.com

Dear Judge Williams:

Voxer submits the following response to Defendants Amazon and Google's (collectively, "Defendants") opening letter brief (D.I. 71 C.A. No. 25-872; D.I. 70 C.A. No. 25-873)[1] regarding the parties' Protective Order disputes. The parties agree as to the majority of the proposed Protective Order, but disputes remain as to access to certain material (Ex. 1 (D.I. 71-1) §§ 7.2(b), 14.4) and transportation of source code (*Id.* § 9(j)). Voxer's positions are outlined below.

I.  **Voxer's Litigation Manager CEO Should Get Access to Confidential Material**

Section 7.2 covers who may access Confidential material, §7.2(b) relates to the disclosure of such material to up to two House Counsel, and § 14.4 addresses, *inter alia*, where such material may be accessed. The parties disagree as to whether Irv Remedios, its non-lawyer CEO involved in managing these actions, should be able to serve as Voxer's second House Counsel and whether he can access that material from his place of residence/work in Toronto.

Voxer requires the assistance of Mr. Remedios to evaluate, assist with, and manage these actions as they progress, and weigh in on critical details related to Voxer's litigation strategy (similar to House Counsel, Ex. 1 § 2.9). Mr. Remedios' lack of access to Confidential material in these actions would impede Voxer's ability to assist its outside counsel by preventing collaboration in the same ways that Defendants will be able to collaborate with their outside counsel. Preventing Mr. Remedios from accessing the same material as Defendants' House Counsel would also hinder the parties' ability to have full and frank discussions that arise during the actions.

Defendants' arguments against permitting Mr. Remedios access are unavailing. *First*, Defendants oppose disclosure of Confidential material to Mr. Remedios for fear of inadvertent misuse of that material. To be clear, the dispute here is not about "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items—"extremely sensitive 'CONFIDENTIAL Information or Items,' disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means"—or "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items. That information is covered by §§ 7.3 and 7.4, respectively, and neither permits sharing with House Counsel. Balancing Voxer and Mr. Remedios' needs against Mr. Remedios' role, permitting access to Confidential material is appropriate. *Second*, Defendants' arguments about Mr. Remedios being a "critical fact witness" are speculative and belied by past litigation. Considering their transfer briefing, Defendants have identified at least six fact witnesses they say they plan to call live (*i.e.*, four inventors, at least one prior art witness, Mr. Remedios). During a five-day trial, which will involve technical and economics experts, such a plan is implausible. Indeed, while Voxer identified Mr. Remedios in its initial disclosures, he never testified live at trial in *Voxer, Inc. v. Facebook, Inc.*, Case Nos. 20-cv-00011-ADA, 1:20-cv-00655-ADA (W.D. Tex.). And Defendants' *Shilpa Pharma* case involved a disqualification motion for outside counsel, which is not an issue here. Moreover, contrary to

---

[1] Because Defendants submitted identical letters, Plaintiffs will only refer to D.I. 71 hereinafter.

Defendants' argument, it is the norm for party representatives to review an opposing party's documents during discovery, especially in advance of a deposition, as the whole discovery process is designed to have all cards on the table and is not a game of surprise. *Third*, Defendants point to Voxer's Jim Rose. But Mr. Rose focuses on intellectual property and is not as well versed as Mr. Remedios in broader issues. And even with Mr. Rose, Voxer would still be limited to one inside-the-company person to more fully assist outside counsel while Defendants would each have two such individuals—putting Voxer at a disadvantage.

To the extent Mr. Remedios is given access, he should be permitted to access that material from his place of residence/work in Toronto under § 14.4. Forcing him to travel to the United States to access Confidential material, as Defendants propose, serves little or no real benefit while it significantly hinders Mr. Remedios' ability to assist Voxer's outside counsel in these actions.

Defendants' arguments against access from Toronto are mistaken. For one, Defendants cannot square Mr. Remedios, who is in Toronto, being a "critical fact witness" with their claim that the "key witnesses [are] based in the U.S." D.I. 71 at 2. Moreover, to the extent Defendants fear where material may be taken, Voxer's proposal limits the territorial bounds of where the material could be accessed from (*i.e.*, U.S. and Toronto). And it is evident that this is not "unrelated foreign travel" as in Defendants' *Data Engine Techs. LLC v. Google LLC*, C.A. No. 14-1115, D.I. 33 (D. Del. Apr. 8, 2015), case cite. Further, Defendants have previously agreed that Protected Material may be accessed from Canada. *See NL Giken, Inc. v. Amazon.com, Inc., Amazon Web Services LLC, Amazon Web Services, Inc. & Twitch Interactive, Inc*, C.A. No. 1:24-28-MN, D.I. 40 (D. Del. Aug. 5, 2024) (allowing Protected Material to be "stored, maintained, and accessed by a Receiving Party at a location in the United States, Japan, or Canada" in § 6(c)) (Ex. A); *Id*. at D.I. 39 (Amazon agreeing to same in § 6(c)) (Ex. B); *CallWave Commc'ns LLC v. Google, Inc. et al.,* C.A. No. 12-1702-RGA, D.I. 136 (D. Del. Aug. 4, 2014) (allowing Protected Information to be available within the United States of America and Canada in § 5(C)) (Ex. C); *Id*. at D.I. 131 (Google agreeing to same in § 5(C)) (Ex. D); *Id.* at D.I. 93 (defendants' earlier letter noting protective order disputes unrelated to export control/permissible locations for access) (Ex. E).

**II.    Secure Commercial Couriers Should be Permitted for Transporting Source Code**

Section 9 governs "HIGHLY CONFIDENTIAL - SOURCE CODE" material, and the dispute here concerns § 9(j)'s transportation requirements. Defendants propose that source code be transported only by hand carry (*e.g.*, by an attorney, expert, or courier) or by other means agreed to by the parties in the future. Voxer requests that source code also be transportable via secure commercial couriers such as FedEx.

FedEx offers reliable overnight shipment with near real-time package tracking. *See* https://www.fedex.com/en-us/customer-support/faqs/receiving/tracking-questions/where-is-my-package.html/; https://www.fedex.com/en-us/shipping/overnight.html#overnight. And in Voxer's counsel's experience, FedEx provides a fast, efficient, and safe transport solution that has worked

2

well for transporting source code in many cases. Defendants' proposal to restrict delivery to hand carry and reject secure commercial couriers like FedEx would unreasonably impede the Receiving Party's ability to distribute copies to those entitled to access them. Requiring individuals—whether counsel, counsel's staff, or a third-party that Defendants would apparently pay for—to travel by air or ground for a day or more is unwarranted when reliable courier services such as FedEx are readily available. This is particularly true given the ongoing uncertainties associated with air travel and where Defendants have pointed to no evidence of specific problems with such courier services. Indeed, Defendants have previously agreed to use FedEx or similarly secure commercial couriers for printed source code. *See Robocast, Inc. v. Google LLC & YouTube LLC*, C.A. No. 22-cv-304-RGA, D.I. 95 (D. Del. Aug. 22, 2023) (permitting source code to be transported via "hand carry, Federal Express or other similarly reliable and tracked courier service" in § 28(xiii)) (Ex. F); *Id.* at D.I. 94 (Google agreeing to same in § 28(xiii)) (Ex. G); *Id.* at D.I. 75 (defendants' earlier letter noting protective order disputes unrelated to source code transportation) (Ex. H); *Acceleration Bay LLC v. Amazon Web Services, Inc.*, C.A. No. 22-904-RGA, D.I. 31 (D. Del. Dec. 2, 2022) (permitting source code transmission by authorized persons "on paper via hand carry, Federal Express (tracking and signature capability required), or other similarly reliable courier (tracking and signature capability required)" in § 8.4) (Ex. I); *Id.* at D.I. 29 (Amazon agreeing to same in § 8.4) (Ex. J); *Id.* at D.I. 25 (defendant's letter noting protective order disputes unrelated to source code transportation) (Ex. K).

Defendants' arguments are unpersuasive. *First*, Voxer's proposal does not preclude hand-carry where the transporting party prefers, or later collaboration on other methods where the parties desire (*i.e.*, "or by any other such method that the Producing Party and Receiving Party may agree upon"). D.I. 71 at 3. Voxer's secure commercial courier proposal merely allows the transporting party to make the decision about which secure transmission method works best given then-existing circumstances. *Second*, Voxer appreciates that Defendants are not telling Voxer how Voxer must transport its own source code, but the dispute here is over how the parties may transport printed copies of the other party's source code and whether Defendants can insert onerous and unwarranted obstacles without evidence of necessity. *Third*, Defendants claim that allowing five copies of printed source reduces the burden on Voxer to virtually nothing. But Defendants' argument is premised on each copy always originally going to the permitted individual who will ultimately need it, but that ignores reality—it is common for copies of printed source code to need to be shipped, including under tight deadlines that secure commercial couriers are best able to accommodate. *Fourth*, Defendants' proposal does not explicitly require the Producing Party to cover costs; this was a suggestion made in the meet and confer process and in Defendants' letter brief.

Defendants have offered no evidence that their proposal would be more secure such that the increased burden and costs are necessary. Thus, Voxer respectfully requests that the Court permit source code transportation via secure commercial couriers like FedEx.

        Respectfully submitted,

        /s/ Michael J. Farnan

        Michael J. Farnan

cc:    Counsel of Record (via E-File)